**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

(1) **RUTH DOWD**, by and through DeeAnn Lemmons and LouAnn Edwards, as her next friends and attorneys-in-fact;
(2) **MORENE S. PATTON**, by and through Elaine Wilczek and Rebecca Stitt, as her next friends and attorneys-in-fact;
(3) **MARVALEE OSBORN**, by and through Rex Osborn, as her next friend and attorney-in-fact;
(4) **PEGGY SCHROEDER**, by and through Falecia Carpenter and Rhonda Dennis, as her next friends and attorneys-in-fact;
(5) **DAVID HUGH DOPPS**, by and through Lynn R. Dopps, as his next friend and attorney-in-fact;

Plaintiffs,

vs. ) Case No. 5:26-cv-01556-J

(6) **JEFFREY CARTMELL**, Director of Oklahoma Department of Human Services, in his official capacity;
(7) **CLAY BULLARD**, CEO/Director of Oklahoma Health Care Authority, in his official capacity;
(8) **LATRISHA SHROPSHIRE,** in her individual capacity;
(9) **DAVID PRESCOTT**, in his individual capacity;
(10) **JESSICA TROBIS**, in her individual capacity;
(11) **NICOLE AMOR**, in her individual capacity;
(12) **SHERRIE SHERRICK**, in her individual capacity;
(13) **JOHN DOE 1,** in his individual capacity;
(14) **JAYDE WOLF**, in her individual capacity;
(15) **JOHN DOE 2,** in his individual capacity;
(16) **HAILEE CLARK**, in her individual capacity;
(17) **NATASHA OWENS,** in her individual capacity;

Defendants.

**<u>AMENDED CLASS ACTION COMPLAINT</u>**

## INTRODUCTION

1. Oklahoma is experiencing a dramatic shift in its aging population. By 2034, Americans 65 and older will outnumber people under 18 for the first time in history (U.S. Census Bureau, 2019). This projection is supported by historical trends in Oklahoma. The number of Oklahomans 65 and older has increased 43% between 2000 and 2020. This translates to a rise from 455,950 in 2000 to 653,078 in only 20 years (U.S. Census Bureau, 2023).[1]

2. The percentage of adults 60 and over in Oklahoma with disabilities is 17% higher than the national average. In particular, the number reporting having a disability that affects ambulation is 6% higher than the national average.[2]

3. In 2023 the United States Census Bureau estimated Oklahoma's population that is 75 and older was 275,000.00.[3]

4. In 2023 the number of Oklahomans who were categorized as "Aged, Blind and Disabled" receiving Medicaid was 172,449.[4]

---

[1] Aging Our Way, Oklahoma's Multisector Plan on Aging, June 2024, p.4 https://oklahoma.gov/content/dam/ok/en/okdhs/documents/okdhs-pdf-library/community-living-aging-and-protective-services/MPA%20Plan.pdf

[2] Oklahoma's Multisector Plan on Aging, The Current State of Aging in Oklahoma, Full Report, October 2023, p.12 https://oklahoma.gov/content/dam/ok/en/okdhs/documents/okdhs-pdf-library/community-living-aging-and-protective-services/MPA%20CSR%20Current%20State%20Report%20FULL.pdf

[3] https://data.census.gov/table/ACSST1Y2023.S0101?q=Oklahoma+Populations+and+People

[4] Oklahoma Legislative Office of Transparency, Health Care Authority: Review of Funding Sources, Report: 24-807-01, September 2024, p.6 https://okloft.gov/reports/health-care-authority-review-of-funding-sources/report

5. In 2024, the total number of Oklahomans who were receiving Medicaid for nursing home care was only 18,762.[5]

6. This case is about what the State of Oklahoma does to its oldest and most vulnerable citizens when money is tight. Each of the seniors at the center of this lawsuit spent a lifetime working, paying taxes, and paying into the very system they now need. Having grown too frail to care for themselves, they did exactly what the law allows: they applied for the long-term-care Medicaid benefits they earned. Federal law gave the State 45 days to say yes or no. In most cases, the State said nothing at all for months, and in many cases failed to take action until it no longer mattered.

7. However, the delay is only half of the scheme. When the State finally makes a determination, Plaintiffs allege they are too often arbitrarily engineered to deny benefits. The State recharacterizes federally compliant, non-assignable promissory notes as countable resources, over-counts income and assets, and applies internal eligibility standards more restrictive than federal law allows by manufacturing reasons to deny applicants who are in fact eligible. Whether by silence or by a denial built on grounds federal law forbids, the result is the same: the eligible elderly do not get the benefits they earned.

8. Given these allegations it is not surprising Attorney General Gentner Drummond requested the State Auditor Cindy Byrd conduct an audit of the Oklahoma

[5] OKHCA SFY 2024 ANNUAL APPENDIX, p.23 https://oklahoma.gov/content/dam/ok/en/okhca/docs/research/data-and-reports/annual-report/2024/AR2024%20Appendix%20FINAL.pdf

Healthcare Authority. On April 24, 2026, Attorney General Gentner Drummond formally requested that State Auditor and Inspector Cindy Byrd conduct an independent audit of the Oklahoma Health Care Authority (OHCA). Drummond demanded corrective action from OHCA Chief Executive Officer Clay Bullard on three occasions after sending formal correspondence documenting systemic failures in the managed care program. "When an agency entrusted with Oklahoma's most vulnerable citizens refuses to hold billion-dollar corporations accountable, it falls to this office to act," said Drummond. "Providers across this state have been sounding the alarm for months. Oklahoma patients are being denied care they are legally entitled to, and OHCA has chosen to defend the MCOs rather than the people it serves. An independent audit is not only warranted – it is essential to restore accountability and protect public funds." [6]

9. Despite Oklahoma's seeming unwillingness to properly manage Medicaid in this state, Oklahoma's participation in Medicaid with the federal government is purely optional. However, once a state voluntarily chooses to participate in Medicaid, the state must comply with the federal Medicaid rules and regulations. See, Harris v. McRae, 448 U.S. 297, 301 (1980); Alexander v. Choate, 469 U.S. 287, 289 (1985).

10. States are not free to pick and choose which applicants they deem worthy to receive benefits. Further, Medicaid spending is shared by the federal government and state governments. In 2022, the federal government funded 69% of total Medicaid costs while

[6] AG Gentner Drummond, public statement (May 2025) ("government malpractice" / "financial meltdown").

the state governments paid the remaining 31% of total Medicaid costs. See, CMS Form 64 (Dec. 2022).

11. In Oklahoma, the Oklahoma Legislature enacted a statute delegating the evaluation of all Medicaid applications to the Oklahoma Department of Human Services (hereinafter referred to as "**OKDHS**").

12. OKDHS does not promulgate any rules or regulations but is tasked with simply following the federal rules and regulations along with those promulgated by Oklahoma Healthcare Authority (hereinafter referred to as "**OHCA**"). See, 63 O.S. § 5009.

13. The State of Oklahoma acting by and through OKDHS and OHCA (collectively referred to as "**State Defendant**") has taken the position its job is to prevent applicants from receiving benefits rather than simply following the rules and regulations. This is apparent from its statements in other legal proceedings confirming they believe it is their responsibility to "limit access" to the Medicaid program instead of simply evaluating applications pursuant to the guidelines provided by Congress.

14. In 2023, the OHCA held over $1.62 billion in surplus funds. Over $1 billion is located in the 340 fund, also known as the CMA Program Disbursing Fund, which is the account used for OHCA's program costs. The next largest fund, the FMAP Preservation Fund, held a balance of $331 million at the end of Oklahoma's state fiscal year 2023.[7]

[7] Oklahoma Legislative Office of Transparency, Health Care Authority: Review of Funding Sources, Report: 24-807-01, September 2024, p.22 https://okloft.gov/reports/health-care-authority-review-of-funding-sources/report

15. Despite these surpluses, State Defendant has engaged in an effort clearly designed to limit Oklahoma's increasingly aging population from receiving the Medicaid long-term benefits care for which the Plaintiffs are qualified and entitled to receive.

16. This action is brought pursuant to the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983, and § 1988 to remedy the systemic and continuing violation of federal law by Oklahoma officials and the state employees they have assigned to evaluate Medicaid applications for long-term care. Specifically, this action seeks to redress the failure of the Oklahoma Healthcare Authority and Oklahoma Department of Human Services to:

a. Act on Plaintiffs' Medicaid application with "reasonable promptness" pursuant to 42 U.S.C. § 1396a(a)(8) as defined by 42 C.F.R. § 435.912 and as interpreted by Shanks-Marrs v. Lake, 2013 U.S. Dist. LEXIS 188627 (W.D. Okla. June 14, 2013) and Lewis v. N.M. Dep't of Health, 261 F.3d 970, 977 (10th Cir. 2001);

b. Provide Plaintiffs' Medicaid benefits with "reasonable promptness" pursuant to 42 U.S.C. § 1396a(a)(8) as defined by 42 C.F.R. § 435.930; and

c. Certify Plaintiffs eligible for Medicaid benefits pursuant to 42 U.S.C. § 1396p(c)(1)(I); 20 C.F.R. § 416.1201; Rose v. Brown, 14 F.4th 1129 (10th Cir. 2021); Gragert v. Lake, 541 Fed. Appx. 853 (10th Cir. 2013); Gragert v. Hendrick; 2014 U.S. Dist. LEXIS 8771 (W.D. Okla. Jan. 24, 2014); Frantz v. Lake, 2014 U.S. Dist. LEXIS 116916 (W.D. Okla. Aug. 22, 2014); Peterson v. Lake, 2014 U.S. Dist. LEXIS 89674 (W.D. Okla. June 30, 2014);

Lemmons v. Lake, 2013 U.S. Dist. LEXIS 39030 (W.D. Okla. Mar. 21, 2013) (later vacated as being mute).

17. State Defendants' failure or refusal to either act on Plaintiffs' Medicaid Applications or certify Plaintiffs eligible for Medicaid benefits and provide Plaintiffs Medicaid benefits, violates Plaintiffs' federal rights which may be brought as a §1983 action. Morris v. Okla. Dep't of Human Servs., 685 F.3d 925 (10th Cir. 2012); Gragert v. Lake, 541 Fed. Appx 853 (10th Cir. 2013); Houghton ex rel. Houghton v. Reinertson, 382 F.3d 1162 (10th Cir. 2004); Lewis v. N.M. Dep't of Health, 261 F.3d 970 (10th Cir. 2001).

18. Defendants' failure or refusal to determine Plaintiffs eligible for Medicaid benefits violates federal rights guaranteed to Plaintiffs and enforceable by Plaintiffs pursuant the Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983; 42 U.S.C. § 1396r(c)(2)(A)(v); 42 U.S.C. § 1396a(a)(8); 42 C.F.R. § 435.912; 42 C.F.R. § 435.907(e)(1); Shanks-Marrs v. Lake, 2013 U.S. Dist. LEXIS 188627, *6-7 (W.D. Okla. June 14, 2013); Rose v. Brown, 14 F.4th 1129 (10th Cir. 2021); Gragert v. Hendrick, 2014 U.S. Dist. LEXIS 8771, *8 (W.D. Okla. Jan. 24, 2014); Peterson v. Lake, 2014 U.S. Dist. LEXIS 89674, *17-18 (W.D. Okla. June 30, 2014); Frantz v. Lake, 2014 U.S. Dist. LEXIS 116916, *17-18 (W.D. Okla. Aug. 22, 2014) and Ansley v. Lake, 2016 U.S. Dist. LEXIS 30014, *11 (W.D. Okla. Mar. 9, 2016).

19. The federal Medicaid law entitling Plaintiffs to Medicaid benefits is clearly established in 42 U.S.C. § 1396p(c)(1)(I) and in the cases of Rose v. Brown, 14 F.4th 1129 (10th Cir. 2021); Shanks-Marrs v. Lake, 2013 U.S. Dist. LEXIS 188627, *6-7 (W.D. Okla. June 14, 2013); Gragert v. Lake, 541 Fed. Appx. 853 (10th Cir. 2013); Gragert v. Hendrick,

2014 U.S. Dist. LEXIS 8771 (W.D. Okla. Jan. 24, 2014); Frantz v. Lake, 2014 U.S. Dist. LEXIS 116916 (W.D. Okla. Aug. 22, 2014); Peterson v. Lake, 2014 U.S. Dist. LEXIS 89674 (W.D. Okla. June 30, 2014); Lemmons v. Lake, 2013 U.S. Dist. LEXIS 39030 (W.D. Okla. Mar. 21, 2013) (later vacated as being mute) and Harper v. Okla. ex rel. Okla. Dep't of Human Serv's, 2011 U.S. Dist. LEXIS 157628 (W.D. Okla. Mar. 22, 2011).

20. Plaintiffs seek declaratory and injunctive relief to end the violation of federal law taking place in Oklahoma which denies our state's seniors the delivery of prompt, complete and continuing access to vitally necessary long-term care benefits.

## PARTIES

21. Plaintiff, Ruth Dowd (hereinafter referred to as "**Plaintiff Dowd**" or "**Ms. Dowd**"), is a 82-year-old resident of Broken Arrow, Tulsa County, Oklahoma who applied for benefits under Oklahoma's medical assistance program, pursuant to 42 U.S.C. § 1396 et seq. Ms. Dowd has designated DeeAnn Lemmons and LouAnn Edwards as her acting attorneys-in-fact pursuant to a power of attorney executed by Ms. Dowd.

22. Plaintiff, Morene S. Patton (hereinafter referred to as "**Plaintiff Patton**" or "**Mrs. Patton**"), is an 84-year-old resident of Kingfisher, Kingfisher County, Oklahoma who applied for benefits under Oklahoma's medical assistance program, pursuant to 42 U.S.C. § 1396 et seq. Mrs. Patton has designated Elaine Wilczek and Rebecca Stitt as her as her acting attorneys-in-fact pursuant to a power of attorney executed by Mrs. Patton.

23. Plaintiff, Marvalee Mae Osborn (hereinafter referred to as "**Plaintiff Osborn**" or "**Mrs. Osborn**"), is an 87-year-old resident of Manchester, Grant County, Oklahoma who applied for benefits under Oklahoma's medical assistance program,

pursuant to 42 U.S.C. § 1396 et seq. She is applying for Medicare Advantage Waiver benefits and is currently residing with her daughter, Dana, in Enid, Oklahoma. Rex Osborn is her acting attorney-in-fact pursuant to a power of attorney executed by Mrs. Osborn.

24. Plaintiff, Peggy Elizabth Schroeder (hereinafter referred to as "**Plaintiff Schroeder**" or "**Ms. Schroeder**"), is a 85-year-old resident of Yukon, Oklahoma County, Oklahoma who applied for benefits under Oklahoma's medical assistance program, pursuant to 42 U.S.C. § 1396 et seq. Ms. Schroeder is incapable of taking care of herself and entered Baptist Village of Oklahoma City in Oklahoma City, Oklahoma, on June 15, 2025. Plaintiff Schroeder has designated her daughters, Falecia Carpenter and Rhonda Dennis, as her next friends and attorneys-in-fact.

25. Plaintiff, David Hugh Dopps (hereinafter referred to as "**Plaintiff Dopps**" or "**Mr. Dopps**"), is a 77-year-old resident of Enid, Garfield County, Oklahoma who applied for benefits under Oklahoma's medical assistance program, pursuant to 42 U.S.C. § 1396 et seq. Plaintiff Dopps is incapable of taking care of himself but still resides at home, therefore he is applying for Advantage Waiver benefits. Mr. Dopps has designated Lynn Dopps as his acting attorney-in-fact pursuant to a power of attorney executed by Mr. Dopps.

26. Defendant **Jeffrey Cartmell** is Director of OKDHS. Cartmell is sued in his official capacity. As Director of OKDHS, Cartmell has a duty to ensure the State of Oklahoma's federally funded Medicaid program is administered in accordance with federal and state law.

27. Defendant **Clay Bullard** is CEO of the OHCA. Bullard is sued in his official capacity. As CEO of OHCA, Bullard has the duty to ensure the State of Oklahoma's federally funded Medicaid program is administered in accordance with federal and state law. Defendants Cartmell and Bullard will be here after be referred to by their respective agencies OKDHS and OHCA respectively and collectively referred to as **"State Defendants**".

28. Defendants **Latrisha Shropshire** and **David Prescott** are sued in their individual capacities for their individual acts in determining Plaintiff Dowd's medical eligibility under OAC §317:35-5-63 and OAC §340:1-7-7 and for their individual representation of State Defendant.

29. Defendants **Jessica Trobis** and **Nicole Amor** are sued in their individual capacities for their individual acts in determining Morene Patton's medical eligibility under OAC §317:35-5-63 and OAC §340:1-7-7 and for their individual representation of State Defendant.

30. Defendants **Sherrie Sherrick** and **John Doe 1** are sued in their individual capacities for their individual acts in determining Marvalee Osborn's medical eligibility under OAC §317:35-5-63 and OAC §340:1-7-7 and for their individual representation of State Defendant.

31. Defendants **Jayde Wolf** and **John Doe 2** are sued in their individual capacities for their individual acts in determining Peggy Schroeder's medical eligibility under OAC §317:35-5-63 and OAC §340:1-7-7 and for their individual representation of State Defendant.

32. Defendants **Hailee Clark** and **Natasha Owens** are sued in their individual capacities for their individual acts in determining David Dopps' medical eligibility under OAC §317:35-5-63 and OAC §340:1-7-7 and for their individual representation of State Defendant.

## JURISDICTION AND VENUE

33. This Court has jurisdiction pursuant to 28 U.S.C. §1331.

34. Pursuant to 28 U.S.C. §1343(a)(3), this Court is authorized to enter judgment and grant relief for violations of the Fourteenth Amendment to the United States Constitution.

35. Pursuant to 28 U.S.C. §1343(a)(4), this Court is authorized to enter judgment and grant relief for violations of federal law brought under 42 U.S.C. §1983 and §1988.

36. Pursuant to 28 U.S.C. §1391(b)(1)-(2), venue is proper in this Court as Defendants reside in this District and the events giving rise to the claims contained herein occurred in this District.

37. This Court is authorized to grant injunctive relief pursuant to 28 U.S.C. § 2202.

## CLASS ALLEGATIONS

38. Plaintiffs bring this action as a statewide class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of: all individuals who, on or after January 1, 2025, applied to the State of Oklahoma for long-term-care Medicaid benefits and whose applications Defendants failed to adjudicate in accordance with federal law — that is, who were denied a timely, accurate, and lawful determination of eligibility.

39. There exist questions of law and/or fact common to the Plaintiff Class that predominate over any individual question. Common questions of fact and law include, without limitation:

a. Whether Defendants have violated Plaintiffs' and class members' federal rights by failing, or refusing, to render an approval or denial of the Plaintiffs' and class members' applications for long-term care benefits within forty-five (45) days of the application being submitted;

b. Whether Defendants have violated the Plaintiffs' and class members' federal rights by unlawfully denying the Plaintiffs' and class members' applications for Medicaid long-term care benefits by crediting them with higher income and/or resources than is allowable by law;

c. Whether Defendants have acted individually, or in concert, to create a scheme to intentionally deny eligible seniors in Oklahomans from receiving Medicaid benefits they are entitled to receive based upon internal guidelines for approval that are more stringent than what is federally required; and,

d. Whether Defendants have acted individually, or in concert, to stall the process for approval past the forty-five (45) day requirement to keep from paying benefits to the applicant due to the applicant's death or other reason.

40. The Class members are so numerous that joinder of all members is impracticable. Upon information and belief, a mere review of the undersigned counsel's own clients, past and present, show from 2007 to 2025 there were approximately 186 Medicaid applications submitted with an average decision time after application of 148 days. The current

class size will be determined after the Plaintiffs have had an opportunity to conduct discovery.

41. The claims of all named individual Plaintiffs are typical of the claims of members of the Class. Plaintiffs' and class members' claims are for Defendants' failure or refusal to process and evaluate their applications for long-term care Medicaid benefits in accordance with federal law.

42. Plaintiffs are adequate to represent the Class because they are the deprived of the same federal rights of which they seek to enforce on behalf other Class members.

43. Plaintiffs are committed to successfully prosecuting the claims made in this complaint and understand their responsibility to represent both their personal interests and the interests of other class members.

44. Plaintiffs are represented by experienced counsel who will adequately represent the interests of the Class.

45. Plaintiffs will fairly and adequately protect the interests of the Class.

46. Plaintiffs' interest in the relief sought in this Complaint are consistent with and not antagonistic to those of any person within the Class.

47. Because the claims of the proposed class members are identical, the questions of law and fact common to all members of the proposed class predominate over any questions affecting only individual members.

48. As all class members have claims identical to Plaintiffs', the interest of class members in individually controlling the prosecution or defense of separate actions is slight.

49. Plaintiffs are not aware of any other similar claims pending by members of

the proposed class in any forum.

50. Plaintiffs are unaware of class members who want to individually prosecute their claims.

51. Class members interested in individually litigating their claims would most likely have already initiated litigation.

52. If all similarly situated senior citizens in need of long-term care benefits prosecuted separate actions, there would be a risk of inconsistent or varying adjudications with respect to individuals that would establish incompatible standards of conduct for Defendants; and Defendants have acted or refused to act on grounds that apply generally to numerous similarly situated seniors. Therefore, final injunctive relief with corresponding declaratory relief are appropriate respecting all such seniors.

53. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy because the questions of law or fact common to similarly situated seniors predominate over any questions affecting them individually. A multiplicity of suits with consequent burden on the courts and Defendants should be avoided. It would be virtually impossible or impracticable for all Class members to intervene as parties in this action, and there are no other realistic alternatives to adjudicate the class action claims.

54. It is desirable to concentrate this litigation in this forum because Plaintiffs are able to demonstrate personal jurisdiction in this forum and aggregate their claims in this forum, and Plaintiffs' claims arose within Oklahoma City, Oklahoma, which is geographically convenient to parties, witnesses, and class counsel.

55. There are no unusual difficulties likely to be encountered in the management of

this litigation as a class action.

56. This case is particularly suitable for adjudication as a class action.

57. Notice to the Class may be accomplished inexpensively, efficiently and in a manner best designed to protect the due process rights of all Class members by means of written notices supplied through Defendants' system of communication with current and past applicants/enrollees. Plaintiffs will also institute an internet-based notice system directly accessible through their counsel's website: https://www.westoklaw.com.

58. Pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiffs propose a class composed of two: subclasses as follows:

59. Subclass 1— all individuals who on or after January 1, 2025, have applied to receive long-term care Medicaid benefits from the State of Oklahoma, and have not received a final eligibility determination within 45 days of the application; and,

60. Subclass 2— all individuals who on or after January 1, 2025, have applied to receive long-term care Medicaid benefits from the State of Oklahoma who received an eligibility determination that denied or reduced benefits on grounds not permitted by federal law, including but not limited to (i) the improper treatment of Medicaid-qualifying promissory notes; (ii) the crediting of income or resources in excess of amounts allowable by law; and (iii) the application of internal eligibility standards more restrictive than those required by federal law.

**<u>LEGAL ALLEGATIONS</u>**

61. Title XIX of the Social Security Act codified at 42 U.S.C. § 1396 et seq. governs the federal Medicaid program. It authorizes the establishment by states of medical

assistance programs for individuals who meet certain eligibility requirements. These programs are jointly funded by the federal and state governments and are designed by states within the framework of options and requirements established under the Medicaid statute.

62. Pursuant to 42 U.S.C. § 1396a(a)(8), "all individuals wishing to make application" for Medicaid benefits "shall have the opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."

63. Title 42 C.F.R. §435.912 and 42 C.F.R. §435.930 are regulations implementing the "reasonable promptness" standard contained in 42 U.S.C. § 1396a(a)(8).

64. Title 42 C.F.R. §435.912(c)(3)(ii) says, "Except as provided in paragraph (e) of this section, the determination of eligibility for any applicant…may not exceed – (ii) 45 calendar days for all other applicants."

65. Title 42 C.F.R. §435.912(e) provides, "The agency must determine eligibility within the standards except in unusual circumstances, for example – (1) When the agency cannot reach a decision because the applicant…or an examining physician delays or fails to take a required action, or (2) When there is an administrative or other emergency beyond the agency's control."

66. Courts have held Medicaid applicants have a property interest in their Medicaid benefits protected by the Due Process Clause of the Fourteenth Amendment. Gutierrez v. Saenz, 145 S. Ct. 2258 (2025); Goldberg v. Kelly, 397 U.S. 254 (1970); Atkins v. Parker, 472 U.S. 115 (1985); Lewis v. New Mexico Dep't of Health, 94 F. Supp 2d 1217 (N.M. 2000); Kelly v. Railroad Retirement Bd., 625 F.2d 486 (3rd Cir. 1980); Mallette v. Arlington County Employees' Retirement System II, 91 F.3d 630 (4th Cir. 1996); Holbrook

v. Pitt, 643 F.2d 1261 (7th Cir. 1981); Daniels v. Woodbury County, 742 F.2d 1128 (8th Cir. 1984); National Ass'n of Radiation Survivors v. Derwinski, 994 F.2d 583 (9th Cir. 1992); Griffeth v. Detrich, 603 F.2d 118 (9th Cir. 1979); Haitian Refugee Ctr., Inc. v. Nelson, 872 F.2d 1555 (11th Cir. 1989).

67. Courts have recognized Medicaid applicants' rights to receive Medicaid benefits are federal rights provided Plaintiffs by 42 U.S.C. §1396a(a)(8). Ansley v. Lake, 2016 U.S. Dist. LEXIS 30014 (W.D. Okla. Mar. 9, 2016); Lemmons v. Lake, 2013 U.S. Dist. LEXIS 39030 (W.D. Okla. Mar. 21, 2013) (later vacated as being moot); Shanks-Marrs v. Lake, 2013 U.S. Dist. LEXIS 188627 (W.D. Okla. June 14, 2013); Clayton v. Lake, 2014 U.S. Dist. LEXIS 6875 (W.D. Okla. Jan. 21, 2014); Gragert v. Hendricks, 2014 U.S. Dist. LEXIS 8771 (W.D. Okla. Jan. 24, 2014); Peterson v. Lake, 2014 U.S. Dist. LEXIS 89674 (W.D. Okla. June 30, 2014); Frantz v. Lake, 2014 U.S. Dist. LEXIS 116916 (W.D. Okla. Aug. 22, 2014); Oklahoma Chapter of American Academy of Pediatrics (OKAAP) v. Fogarty, 366 F. Supp.2d 1050 (N.D. Okla. 2005).

68. Courts have further recognized Medicaid applicants having a private right of action to enforce 42 U.S.C. §1396a(a)(8) under the test provided in Gonzaga University v. Doe, 536 U.S. 273 (2002) and adopted by Medina v. Planned Parenthood S. Atl., 145 S. Ct. 2219 (2025). Mandy R. v. Owens, 464 F.3d 1139 (10th Cir. 2006); Gragert v. Hendrick, 2014 U.S. Dist. LEXIS 8771 (W.D. Okla. Jan. 24, 2014); Ansley v. Lake, 2016 U.S. Dist. LEXIS 30014 (W.D. Okla. Mar. 9, 2016); Bryson v. Shumway, 308 F.3d 79 (1st Cir. 2002); Sabree v. Richman, 367 F.3d 180 (3rd. Cir. 2004); Doe v. Kidd, 501 F.3d 348 (4th Cir. 2007); Romano v. Greenstein, 721 F.3d 373 (5th Cir. 2013); Waskul v. Washtenaw Cty.

Cmty. Mental Health, 979 F.3d 426 (6th Cir. 2020); Bertrand v. Maram, 495 F.3d 452 (7th Cir. 2007); Ball v. Rodgers, 492 F.3d 1094 (9th Cir. 2007).

69. Pursuant to 42 U.S.C. §1396r(c)(2)(A)(v), "A nursing facility must permit each resident to remain in the facility and must not transfer or discharge the resident from the facility unless – *the resident* has failed, after reasonable and appropriate notice, *to pay (or to have paid under this title [42 U.S.C. §§1396 et seq.]*. . .on the resident's behalf) for a stay at the facility." (emphasis added).

70. Courts have also recognized Medicaid applicants having a private right of action to enforce certain rights granted under the Federal Nursing Home Reform Act and codified at 42 U.S.C. §1396r(c) which includes the right to enforce payment of their Medicaid benefits. 42 U.S.C. §1396r(c)(2)(A)(v); Health and Hospital Corporation of Marion Cty. v. Talevski, 599 U.S. 166 (2023); Medina v. Planned Parenthood S. Atl., 145 S. Ct. 2219 (2025).

71. Courts have held Medicaid applicants may challenge adverse Medicaid decisions through a §1983 action. Gragert v. Lake, 541 Fed. Appx 853, 855 (10th Cir. 2013); Morris v. Okla. Dep't of Human Servs., 685 F.3d 925, 928 (10th Cir. 2012); Houghton ex rel. Houghton v. Reinertson, 382 F.3d 1162, 1164 (10th Cir. 2004); Lewis v. N.M. Dep't of Health, 261 F.3d 970, 975-979 (10th Cir. 2001).

72. Engaging in planning to receive Medicaid benefits is both legal and acceptable. Morris v. Okla. Dep't of Human Servs., 685 F.3d 925, 937 (10th Cir. 2012); Rose v. Brown, 14 F.4th 1129, 1133 (10th Cir. 2021).

73. According to 42 U.S.C. § 1396p(c)(1)(I), an individual is not penalized for a transfer of assets in exchange for a promissory note which: "(i) has a repayment term that is actuarially sound (as determined in accordance with actuarial publications of the Office of the Chief Actuary of the Social Security Administration), (ii) provides for payments to be made in equal amounts during the term of the loan, with no deferral and no balloon payments made; and (iii) prohibits the cancellation of the balance upon the death of the lender."

74. Pursuant to 20 C.F.R. §416.1201, promissory notes which cannot be transferred and converted to cash are illiquid and not a countable resource for Medicaid purposes.

75. The use of promissory notes by Medicaid applicants to qualify for Medicaid benefits has been sanctioned by the Tenth Circuit in the cases of Rose v. Brown, 14 F.4th 1129 (10th Cir. 2021) and Gragert v. Lake, 541 Fed. Appx. 853 (10th Cir. 2013); and by the District Court for the Western District of Oklahoma in the cases of Gragert v. Hendrick, 2014 U.S. Dist. LEXIS 8771 (W.D. Okla. Jan. 24, 2014); Frantz v. Lake, 2014 U.S. Dist. LEXIS 116916 (W.D. Okla. Aug. 22, 2014); Peterson v. Lake, 2014 U.S. Dist. LEXIS 89674 (W.D. Okla. June 30, 2014); Lemmons v. Lake, 2013 U.S. Dist. LEXIS 39030 (W.D. Okla. Mar. 21, 2013) (later vacated as being mute); and Harper v. Okla. ex rel. Okla. Dep't of Human Serv's, 2011 U.S. Dist. LEXIS 157628 (W.D. Okla. Mar. 22, 2011).

76. Individuals do not have qualified immunity for acts which violate clearly established rights. Robbins v. Okla. ex rel. Dep't of Human Servs., 519 F.3d 1242 (10th Cir. 2008). A violation is clearly established if every reasonable official would understand

what he is doing is unlawful. Generally, the plaintiff must show there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Columbia v. Wesby, 583 U.S. 48 (2018); Colbruno v. Kessler, 928 F.3d 1155 (10th Cir. 2019).

## FACTUAL ALLEGATIONS

### RUTH DOWD

77. Plaintiff Dowd is incapable of taking care of herself and entered Forest Hill Care and Rehab in Broken Arrow. Oklahoma. on April 18, 2024.

78. On November 27, 2025 Ms. Dowd transferred assets in exchange for a Medicaid qualifying promissory note identical (except as to the loaned amount and number of payments) to the one used in the cases cited in paragraphs 73-76 herein.

79. Plaintiff Dowd applied for Medicaid benefits on or about December 15, 2025, and said application was received by OKDHS on December 18, 2025. Plaintiff Dowd has not received a decision from OKDHS regarding her application for eligibility for Medicaid benefits (more than 186 days after applying for Medicaid).

80. Latrisha Shropshire and David Prescott are the representatives of State Defendant assigned to determine Ms. Dowd's Medicaid eligibility.

81. Latrisha Shropshire and David Prescott and State Defendant were required to have acted on Ms. Dowd's Medicaid application on or before January 29, 2026.

82. OKDHS issued their request additional information to Plaintiff Dowd on January 5, 2026. The additional request for information from OKDHS was responded to

by Plaintiff Dowd by January 22, 2026. Since then, Plaintiff Dowd has not been provided any additional substantive updates as to the status of her application.

83. OKDHS has not requested the Plaintiff Dowd provide any additional information.

84. OKDHS and OHCA have failed or refused to take any additional action on Plaintiff's Medicaid application.

85. As of the date of her application, Plaintiff met the financial eligibility requirements for Medicaid; and therefore, is eligible to be a Medicaid beneficiary as of that date.

86. Plaintiff Dowd, and the other named Plaintiffs, initiated this suit against State Defendant to receive their Medicaid benefits.

**MORENE PATTON**

87. Plaintiff Patton entered the Cimarron Nursing Center in Kingfisher, Oklahoma, on September 3, 2025. She is physically incapable of caring for himself.

88. Plaintiff Patton applied for Medicaid benefits on or about October 2, 2025, and said application was received by OKDHS on October 7, 2025. Plaintiff Patton's application has been an ongoing, 238-day ordeal characterized by repeated delays, redundant information requests from OKDHS, and significant communication breakdowns. Despite an initial interview shortly after the application was received, the process quickly stalled when OKDHS issued an ADM-92 (Request for Information) in late November requesting information regarding minerals Plaintiff Patton had already provided. Throughout December, 2025 and January, 2026, Plaintiff Patton sent numerous

status inquiries which went unanswered by OKDHS, culminating in the Cimarron Nursing Center receiving a denial notice which OKDHS repeatedly failed to provide to Ms. Patton's attorneys directly. Since then, the Plaintiff Patton's application has remained in limbo through early June 2026, bogged down by continuous, piecemeal requests from OKDHS for additional documentation regarding deeds, property appraisals, and trust exhibits.

89. Jessica Trobis and Nicole Amor are the representatives of State Defendant assigned to determine Ms. Patton's Medicaid eligibility.

90. OKDHS and OHCA have failed or refused to approve Plaintiff's Medicaid application.

91. As of the date of her application, Plaintiff Patton met the financial eligibility requirements for Medicaid; and therefore, is eligible to be a Medicaid beneficiary as of that date.

92. Ms. Patton, and the other named Plaintiffs, initiated this suit against State Defendant to receive their Medicaid benefits.

**MARVALEE OSBORN**

93. Plaintiff Osborn applied for the Advantage Waiver Program because she is incapable of taking care of herself but still resides with her daughter.

94. Plaintiff Osborn applied for Medicaid benefits on or about on February 9, 2026, has experienced significant delays characterized by a slow initial intake and a pattern of piecemeal documentation requests over a 105-day period. Following a delayed initial interview which did not occur until 36 days after the application was received, OKDHS issued five separate ADM-92 Requests for Information between March 20, 2026, and May

27, 2026, repeatedly requesting fragmented financial details regarding income, farming status, out-of-state property valuations in Kansas, and promissory notes. Despite the applicant providing prompt responses to these rolling inquiries, progress has remained stalled; OKDHS only confirmed they were still "determining financial eligibility" on day 100, just days before issuing yet another ADM-92 documentation request on day 105.

95. Sherrie Sherrick and John Doe 1 are the representatives of State Defendant assigned to determine Ms. Osborn's Medicaid eligibility.

96. As of the date of her application, Plaintiff met the financial eligibility requirements for Medicaid.

97. Plaintiff Osborn, and the other named Plaintiffs, initiated this suit against State Defendant to receive their Medicaid benefits.

## PEGGY ELIZABETH SCHROEDER

98. Plaintiff Schroeder is incapable of taking care of herself and entered Baptist Village of Oklahoma City in Oklahoma City, Oklahoma, on June 15, 2025.

99. Plaintiff Schroeder applied for Medicaid benefits on March 4, 2026. Said application has been subjected to a continuous pattern of fragmented documentation requests and processing delays over an 85-day period. Although the applicant has been highly responsive by answering initial ADM-92 (Requests for Information) inquiries regarding a promissory note and firefighter pension income either on the same day or within two days of the request during March and early April, DHS issued a "Delayed for processing" notice on day 43. Following multiple status inquiries from the Plaintiff throughout April and May, OKDHS confirmed they were "still determining financial

eligibility" on May 21, 2026 (day 73) only to initiate a new wave of piecemeal information requests for Schwab records and bank account access in late May and early June, keeping the application stalled and unresolved.

100. Jayde Wolf and John Doe 2 are representatives of State Defendant assigned to determine Plaintiff Schroeder's Medicaid eligibility.

101. OKDHS and OHCA have failed or refused to approve Plaintiff's Medicaid application.

102. As of the date of her application, Plaintiff met the financial eligibility requirements for Medicaid; and therefore, is eligible to be a Medicaid beneficiary as of that date.

103. Plaintiff Schroeder, and the other named Plaintiffs, initiated this suit against State Defendant to receive their Medicaid benefits.

**DAVID DOPPS**

104. Plaintiff Dopps is incapable of taking care of himself but still resides at home, therefore he is applying for Advantage Waiver.

105. Plaintiff Dopps applied for Medicaid benefits on February 9, 2026. His application culminated in an abrupt denial after 106 days of processing and communication hurdles. Following a delayed initial interview nearly a month after the application was received, the applicant promptly responded to an initial ADM-92 information request in mid-March. A month later, DHS issued a second ADM-92 centered on a separate maintenance order, asserting David had a right to half of the assets of his spouse that was

awarded to her based upon the Oklahoma District Court's finding concerning the validity of the parties antenuptial (prenup) agreement. Despite the Oklahoma court's finding, OKDHS insisted they were entitled to financial information concerning the accounts covered by the prenup. Although Plaintiff Dopps responded to this inquiry by May 4, 2026, and DHS communicated in mid-May that the case was "pending clarification from legal" and they were "still determining financial eligibility," OKDHS ultimately issued a denial on May 28, 2026, citing a "failure to provide information" regarding the financial details of Lynn Dopps following the separate maintenance order.

106. Hailee Clark and Natasha Owens are the representatives of State Defendant assigned to determine Plaintiff Dopps' Medicaid eligibility.

107. OKDHS and OHCA have failed or refused to approve Plaintiff's Medicaid application in accordance with federal law.

108. As of the date of his application, Plaintiff met the financial eligibility requirements for Medicaid; and therefore, is eligible to be a Medicaid beneficiary as of that date.

109. Plaintiff Dopps, and the other named Plaintiffs, initiated this suit against State Defendant to receive their Medicaid benefits.

## COUNT I
## VIOLATIONS OF THE FOURTEENTH AMENDMENT
## TO THE UNITED STATES CONSTITUTION

110. Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

111. The Due Process Clause of the Fourteenth Amendment provides, “no State shall . . . deprive any person of life, liberty, or property, without due process of the law.” U.S. Const. amend. XIV, §1.

112. Plaintiffs’ Medicaid benefits are property protected by the Fourteenth Amendment as explained in the cases cited in paragraph 66 herein.

**A. RUTH DOWD**

113. Pursuant to the Fourteenth Amendment to the United States Constitution, Plaintiff Dowd is seeking to recover from Latrisha Shropshire, David Prescott, and State Defendant property belonging to Plaintiff Dowd being Plaintiff Dowd’s Medicaid benefits and all damages resulting from the unconstitutional deprivation of her property (Plaintiff Dowd’s Medicaid benefits).

114. Plaintiff Dowd is eligible to receive Medicaid benefits.

115. Plaintiff Dowd employed the use of a promissory note in her application for Medicaid benefits. Said note met the requirements of paragraphs 73-76 above and was identical to the promissory note utilized in Rose v. Brown, 14 F.4th 1129 (10th Cir. 2021) except as to the amount and number of payments. However, said promissory note is well within the amount and number of payments regularly approved by OKDHS in long-term care applications. A non-exhaustive sampling of this firm’s own prior application submissions shows Medicaid applicants from 2009 – 2025 have routinely been approved while utilizing a promissory note. These notes were the same as utilized by Plaintiff Dowd except as to total amount and number of payments. Those amounts varied from $80,308.75 to $483,000.00. Clearly, there is nothing unusual or abnormal regarding this process and

thus no legally plausible or recognized reason for delay in approving Plaintiff Dowd's Application.

116. Latrisha Shropshire, David Prescott, and State Defendant are wrongfully and illegally withholding and preventing Plaintiff Dowd from receiving her Medicaid benefits.

117. Latrisha Shropshire, David Prescott, and State Defendant had enough time to engage in actual deliberation regarding the approval and payment of Ms. Dowd's Medicaid benefits.

118. The conduct of Latrisha Shropshire, David Prescott, and State Defendant showed a "deliberate indifference" to the property of Plaintiff Dowd, being Plaintiff Dowd's Medicaid benefits, and was "arbitrary" and "unrestrained by established principles of private right and distributive justice."

119. The "deliberate indifference" shown by Latrisha Shropshire, David Prescott, and State Defendant, and the "arbitrary" nature of their conduct satisfies the "shocks-the-conscience" test for a violation of substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution.

120. Latrisha Shropshire, David Prescott, and State Defendant intended to deprive Plaintiff Dowd of her property being Plaintiff Dowd's Medicaid benefits.

121. When balancing the interests of Plaintiff Dowd in her property (Plaintiff Dowd's Medicaid benefit) against the interests of Latrisha Shropshire, David Prescott, and State Defendant in the property of Plaintiff Dowd (Plaintiff Dowd's Medicaid benefits), Latrisha Shropshire, David Prescott, and State Defendant either unduly burdened the

protected interests of Plaintiff Dowd (Plaintiff Dowd's Medicaid benefits), or effected an unwarranted intrusion into those protected property interests.

122. The actions of Latrisha Shropshire, David Prescott, and State Defendant directly resulted in Plaintiff Dowd being deprived of her interest in and to her property (Plaintiff Dowd's Medicaid benefits) which damaged Plaintiff Dowd.

**B. MORENE PATTON**

123. Pursuant to the Fourteenth Amendment to the United States Constitution, Plaintiff Patton is seeking to recover from Jessica Trobis, Nicole Amor, and State Defendant property belonging to Plaintiff Patton being Plaintiff Patton's Medicaid benefits and all damages resulting from the unconstitutional deprivation of her property (Plaintiff Patton's Medicaid benefits).

124. Plaintiff Patton is eligible to receive Medicaid benefits.

125. Jessica Trobis, Nicole Amor, and State Defendant are wrongfully and illegally withholding and preventing Plaintiff Patton from receiving her Medicaid benefits.

126. Jessica Trobis, Nicole Amor, and State Defendant had enough time to engage in actual deliberation regarding the approval and payment of Plaintiff Patton's Medicaid benefits.

127. The conduct of Jessica Trobis, Nicole Amor, and State Defendant showed a "deliberate indifference" to the property of Plaintiff Patton, being Plaintiff Patton's Medicaid benefits, and was "arbitrary" and "unrestrained by established principles of private right and distributive justice."

128. The "deliberate indifference" shown by Jessica Trobis, Nicole Amor, and State Defendant, and the "arbitrary" nature of their conduct satisfies the "shocks-the-conscience" test for a violation of substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution.

129. Jessica Trobis, Nicole Amor, and State Defendant intended to deprive Plaintiff Patton of her property being Plaintiff Patton's Medicaid benefits.

130. When balancing the interests of Plaintiff Patton in her property (Plaintiff Patton's Medicaid benefit) against the interests of Jessica Trobis, Nicole Amor, and State Defendant in the property of Plaintiff Patton (Plaintiff Patton's Medicaid benefits), Jessica Trobis, Nicole Amor, and State Defendant either unduly burdened the protected interests of Plaintiff Patton (Plaintiff Patton's Medicaid benefits), or effected an unwarranted intrusion into those protected property interests.

131. The actions of Jessica Trobis, Nicole Amor, and State Defendant directly resulted in Plaintiff Patton being deprived of her interest in and to her property (Plaintiff Patton's Medicaid benefits) which damaged Plaintiff Patton.

### C. MARVALEE OSBORN

132. Pursuant to the Fourteenth Amendment to the United States Constitution, Plaintiff Osborn is seeking to recover from Sherrie Sherrick, John Doe 1, and State Defendant property belonging to Plaintiff Osborn being Plaintiff Osborn's Medicaid benefits and all damages resulting from the unconstitutional deprivation of her property (Plaintiff Osborn's Medicaid benefits).

133. Plaintiff Osborn is eligible to receive Medicaid benefits.

134. Sherrie Sherrick, John Doe 1, and State Defendant are wrongfully and illegally withholding and preventing Plaintiff Osborn from receiving her Medicaid benefits.

135. Plaintiff Osborn employed the use of a promissory note in her application for Medicaid benefits. Said note met the requirements of paragraphs 73-76 above and was identical to the promissory note utilized in Rose v. Brown, 14 F.4th 1129 (10th Cir. 2021) except as to the amount and number of payments. However, said promissory note is well within the amount and number of payments regularly approved by OKDHS in long-term care applications. A non-exhaustive sampling of this firm's own prior application submissions shows Medicaid applicants from 2009 – 2025 have routinely been approved while utilizing a promissory note. These notes were the same as utilized by Plaintiff Osborn except as to total amount and number of payments. Those amounts varied from $80,308.75 to $483,000.00. Clearly, there is nothing unusual or abnormal regarding this process and thus no legally plausible or recognized reason for delay in approving Plaintiff Osborn's Application.

136. Sherrie Sherrick, John Doe 1, and State Defendant had enough time to engage in actual deliberation regarding the approval and payment of Plaintiff Osborn's Medicaid benefits.

137. The conduct of Sherrie Sherrick, John Doe 1, and State Defendant showed a "deliberate indifference" to the property of Plaintiff Osborn being Plaintiff Osborn's Medicaid benefits and was "arbitrary" and "unrestrained by established principles of private right and distributive justice."

138. The "deliberate indifference" shown by Sherrie Sherrick, John Doe 1, and State Defendant, and the "arbitrary" nature of their conduct satisfies the "shocks-the-conscience" test for a violation of substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution.

139. Sherrie Sherrick, John Doe 1, and State Defendant intended to deprive Plaintiff Osborn of her property being Plaintiff Osborn's Medicaid benefits.

140. When balancing the interests of Plaintiff Osborn in her property (Plaintiff Osborn's Medicaid benefit) against the interests of Sherrie Sherrick, John Doe 1, and State Defendant in the property of Plaintiff Osborn (Plaintiff Osborn's Medicaid benefits), Sherrie Sherrick, John Doe 1, and State Defendant either unduly burdened the protected interests of Plaintiff Osborn (Plaintiff Osborn's Medicaid benefits), or effected an unwarranted intrusion into those protected property interests.

141. The actions of Sherrie Sherrick, John Doe 1, and State Defendant directly resulted in Plaintiff Osborn being deprived of her interest in and to her property (Plaintiff Osborn's Medicaid benefits) which damaged Plaintiff Osborn.

**D. <u>PEGGY SCHROEDER</u>**

142. Pursuant to the Fourteenth Amendment to the United States Constitution, Plaintiff Schroeder is seeking to recover from Jayde Wolf, John Doe 2, and State Defendant property belonging to Plaintiff Schroeder being Plaintiff Schroeder's Medicaid benefits and all damages resulting from the unconstitutional deprivation of her property (Plaintiff Schroeder's Medicaid benefits).

143. Plaintiff Schroeder is eligible to receive Medicaid benefits.

144. Jayde Wolf, John Doe 2, and State Defendant are wrongfully and illegally withholding and preventing Plaintiff Schroeder from receiving her Medicaid benefits.

145. Plaintiff Schroeder employed the use of a promissory note in her application for Medicaid benefits. Said note met the requirements of paragraphs 73-76 above and was identical to the promissory note utilized in Rose v. Brown, 14 F.4th 1129 (10th Cir. 2021) except as to the amount and number of payments. However, said promissory note is well within the amount and number of payments regularly approved by OKDHS in long-term care applications. A non-exhaustive sampling of this firm's own prior application submissions shows Medicaid applicants from 2009 – 2025 have routinely been approved while utilizing a promissory note. These notes were the same as utilized by Plaintiff Schroeder except as to total amount and number of payments. Those amounts varied from $80,308.75 to $483,000.00. Clearly, there is nothing unusual or abnormal regarding this process and thus no legally plausible or recognized reason for delay in approving Plaintiff Schroeder's Application.

146. Jayde Wolf, John Doe 2, and State Defendant had enough time to engage in actual deliberation regarding the approval and payment of Plaintiff Schroeder's Medicaid benefits.

147. The conduct of Jayde Wolf, John Doe 2, and State Defendant showed a "deliberate indifference" to the property of Plaintiff Schroeder, being Plaintiff Schroeder's Medicaid benefits, and was "arbitrary" and "unrestrained by established principles of private right and distributive justice."

148. The "deliberate indifference" shown by Jayde Wolf, John Doe 2, and State Defendant, and the "arbitrary" nature of their conduct satisfies the "shocks-the-conscience" test for a violation of substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution.

149. Jayde Wolf, John Doe 2, and State Defendant intend to deprive Plaintiff Schroeder of her property being Plaintiff Schroeder's Medicaid benefits.

150. When balancing the interests of Plaintiff Schroeder in her property (Plaintiff Schroeder's Medicaid benefit) against the interests of Jayde Wolf, John Doe 2, and State Defendant in the property of Plaintiff Schroeder (Plaintiff Schroeder's Medicaid benefits), Jayde Wolf, John Doe 2, and State Defendant either unduly burdened the protected interests of Plaintiff Schroeder (Plaintiff Schroeder's Medicaid benefits), or effected an unwarranted intrusion into those protected property interests.

151. Jayde Wolf, John Doe 2, and State Defendant directly resulted in Plaintiff Schroeder being deprived of her interest in and to her property (Plaintiff Schroeder's Medicaid benefits) which damaged Plaintiff Schroeder.

**E. <u>DAVID DOPPS</u>**

152. Pursuant to the Fourteenth Amendment to the United States Constitution, Plaintiff Dopps is seeking to recover from Hailee Clark, Natasha Owens, and State Defendant property belonging to Plaintiff Dopps being Plaintiff Dopps's Medicaid benefits and all damages resulting from the unconstitutional deprivation of his property (Plaintiff Dopps's Medicaid benefits).

153. Plaintiff Dopps is eligible to receive Medicaid benefits.

154. Hailee Clark, Natasha Owens, and State Defendant are wrongfully and illegally withholding and preventing Plaintiff Dopps from receiving his Medicaid benefits.

155. Hailee Clark, Natasha Owens, and State Defendant had enough time to engage in actual deliberation regarding the approval and payment of Plaintiff Dopps's Medicaid benefits.

156. Hailee Clark, Natasha Owens, and State Defendant showed a "deliberate indifference" to the property of Plaintiff Dopps being Plaintiff Dopps's Medicaid benefits, and was "arbitrary" and "unrestrained by established principles of private right and distributive justice."

157. The "deliberate indifference" shown by Hailee Clark, Natasha Owens, and State Defendant, and the "arbitrary" nature of their conduct satisfies the "shocks-the-conscience" test for a violation of substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution.

158. Hailee Clark, Natasha Owens, and State Defendant intended to deprive Plaintiff Dopps of his property being Plaintiff Dopps's Medicaid benefits.

159. When balancing the interests of Plaintiff Dopps in his property (Plaintiff Dopps's Medicaid benefit) against the interests of Hailee Clark, Natasha Owens, and State Defendant in the property of Plaintiff Dopps (Plaintiff Dopps's Medicaid benefits), Hailee Clark, Natasha Owens, and State Defendant either unduly burdened the protected interests of Plaintiff Dopps (Plaintiff Dopps's Medicaid benefits), or effected an unwarranted intrusion into those protected property interests.

160. The actions of Hailee Clark, Natasha Owens, and State Defendant directly resulted in Plaintiff Dopps being deprived of his interest in and to his property (Plaintiff Dopps's Medicaid benefits) which damaged Plaintiff Dopps.

**COUNT II**
**VIOLATIONS OF 42 U.S.C. §1396a(a)(8)**
**ENFORCEABLE THROUGH 42 U.S.C. §1983 AND §1988**

161. Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

162. No state court action is pending related to this matter.

163. Plaintiffs and Subclass 1 members are eligible and qualify for Medicaid benefits.

164. Plaintiffs acknowledge Lancaster v. Cartmell, 162 F.4th 1063 (10th Cir. 2025)( Petition for certiorari filed Mar. 19, 2026 (No.25-1228)**),** presently forecloses §1983 enforcement of 42 U.S.C. §1396a(a)(8) within this Circuit. Plaintiffs plead this Count expressly to preserve the issue during Supreme Court review.

165. Defendants have deprived Plaintiffs and Subclass 1 members of their federal statutory rights by failing and refusing to provide Plaintiffs and Subclass 1 members with Medicaid benefits with reasonable promptness pursuant to 42 U.S.C. § 1396a(a)(8) and as defined by 42 C.F.R. §435.912.

166. Defendants have further deprived Plaintiffs and Subclass 1 members of their federal statutory rights by failing and refusing to act on Plaintiffs and Subclass 1 members' applications for Medicaid benefits within forty-five (45) days after the filing of their application as provided in 42 C.F.R. §435.912.

167. Pursuant to 42 U.S.C. § 1396a(a)(8), "all individuals wishing to make application" for Medicaid benefits "shall have the opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."

168. Medicaid applicants' rights to receive Medicaid benefits are federal rights provided by 42 U.S.C. §1396a(a)(8) as explained in the cases cited in paragraph 65 herein.

169. Medicaid applicants can enforce their federal rights under 42 U.S.C. §1396a(a)(8) by and through 42 U.S.C. §1983 and §1988.

170. Medicaid applicants have a private right of action to enforce 42 U.S.C. §1396a(a)(8) as explained in the cases cited in paragraph 66 herein.

171. The Tenth Circuit has held Medicaid planning to be both legal and acceptable as explained in the cases cited in paragraphs 73-76 herein.

172. Defendants have acted under color of state law when depriving Plaintiffs and Subclass 1 members of their federal rights.

173. As a direct and proximate result of the Defendants' violation of the Plaintiffs' and Subclass 1 members' federal statutory rights, Plaintiffs and Subclass 1 members have sustained injuries and damages.

**COUNT III**
**VIOLATIONS OF 42 U.S.C. § 1396r(c)(2)(A)(v)**
**ENFORCEABLE THROUGH 42 U.S.C. §1983 AND §1988**

174. Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

175. Pursuant to 42 U.S.C. §1396r(c)(2)(A)(v), "A nursing facility must permit each resident to remain in the facility and must not transfer or discharge the resident from

the facility unless – _the resident_ has failed, after reasonable and appropriate notice, _to pay (or to have paid under this title [42 U.S.C. §§1396 et seq.]_. . .on the resident's behalf) for a stay at the facility." (emphasis added).

176. Medicaid applicants' rights to receive Medicaid benefits are federal rights provided by §1396r(c)(2)(A)(v) as explained in the cases cited in paragraph 65 herein.

177. Medicaid applicants can enforce their federal rights under 42 U.S.C. §1396r(c)(2)(A)(v) by and through 42 U.S.C. §1983 and §1988.

178. Medicaid applicants have a private right of action to enforce 42 U.S.C. §1396r(c)(2)(A)(v) as explained in the cases cited in paragraph 68 herein.

179. The transfer-and-discharge protections of 42 U.S.C. §1396r(c)(2)(A)(v) are precisely the provisions the United States Supreme Court held privately enforceable under 42 U.S.C. §1983 in Health & Hospital Corp. of Marion County v. Talevski, 599 U.S. 166 (2023), and that Medina v. Planned Parenthood S. Atl., 606 U.S. 357, 145 S. Ct. 2219 (2025), expressly preserved as the surviving benchmark of clear, rights-creating language. This Count is therefore unaffected by, and is not foreclosed by, Lancaster v. Cartmell, 162 F.4th 1063 (10th Cir. 2025)( Petition for certiorari filed Mar. 19, 2026 (No.25-1228)), which addressed only 42 U.S.C. §1396a(a)(8).

180. Individuals do not have qualified immunity for acts which violate clearly established rights as explained in the cases cited in paragraph 74 herein.

181. Plaintiffs Dowd**,** Osborn, Schroeder, and Subclass 2 engaged in Medicaid planning as sanctioned 42 U.S.C. §1396p(c)(1)(I), 20 C.F.R. §416.1201 and approved by the clear wight of authority summarized in the cases cited in paragraphs 73-76 herein.

182. Plaintiffs Dowd, Patton, Schroeder, and Subclass 2 filed their application for Medicaid benefits showing they were eligible to receive Medicaid benefits.

183. Plaintiffs Dowd, Osborn, Schroeder, and Subclass 2 members made transfers in exchange for Medicaid qualifying promissory notes as sanctioned by 42 U.S.C. §1396p(c)(1)(I), 20 C.F.R. §416.1201 and approved by the clear wight of authority summarized in the cases cited in paragraph **73** herein.

184. Plaintiffs Dowd, Osborn, Schroeder, and Subclass 2 members employed the use of a promissory note in their application for Medicaid benefits. Said note met the requirements of paragraphs 73-76 above except for the amount and number of payments. However, said promissory note is well within the amount and number of payments regularly approved by OKDHS in long-term care applications. A non-exhaustive sampling of this firm's prior application submissions show Medicaid applicants from 2009 – 2025 have been approved while utilizing a promissory note as described in Rose v. Brown, 14 F.4th 1129 (10th Cir. 2021). The notes were the same as utilized by Plaintiffs Dowd, Osborn, Schroeder, and Subclass 2 members except as to total amount and number of payments. Those amounts varied from $80,308.75 to $483,000.00. Clearly, there is nothing unusual or abnormal regarding this process and thus no legally plausible or recognized reason for delay in approving Plaintiffs Dowd, Osborn, Schroeder, and Subclass 2 members Applications.

185. Defendants Latrisha Shropshire, David Prescott, and State Defendant are wrongfully and illegally refusing to certify Plaintiff Dowd eligible for Medicaid benefits and provide Plaintiff Dowd her Medicaid benefits.

186. Defendants Jessica Trobis, Nicole Amor, and State Defendant are wrongfully and illegally refusing to certify Plaintiff Patton eligible for Medicaid benefits and provide Plaintiff Patton her Medicaid benefits.

187. Defendants Jayde Wolf, John Doe 2, and State Defendant are wrongfully and illegally refusing to certify Plaintiff Schroeder eligible for Medicaid benefits and provide Plaintiff Schroeder her Medicaid benefits.

188. State Defendant has wrongfully and illegally refused to certify Plaintiff Subclass 2 members eligible for Medicaid benefits and provide Plaintiff Subclass 2 members Medicaid benefits.

189. Defendants have acted under color of state law when depriving Plaintiffs Dowd, Patton, Schroeder, and Subclass 2 members of their federal rights.

190. As a direct and proximate result of the Defendants' violation of the Plaintiffs' federal rights, Plaintiffs have sustained injuries and damages.

**COUNT V**
**PERMANENT INJUNCTION**

191. Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

192. Plaintiffs and class members are entitled to a permanent injunction: (a) terminating State Defendants' violation of the Plaintiffs and class members' federal rights;

(b) ordering the State Defendants to process all Medicaid Applications within forty-five (45) days of receipt, and (b) holding Plaintiffs and class members eligible for Medicaid benefits.

193. Plaintiffs and class members are also entitled to a permanent injunction requiring State Defendants to pay Plaintiffs and class members' Medicaid benefits commencing back to the later of: (a) the date of Plaintiffs and class members' eligibility for Medicaid benefits, or (ii) three months prior to the date of Plaintiffs and class members' Medicaid application pursuant to 42 U.S.C. §1396a(a)(34).

## CONCLUSION

WHEREFORE, premises considered, Plaintiffs request this Court grant the following relief:

A. Enter a permanent injunction ordering State Defendant to cease denying Medicaid coverage to Plaintiffs and class members and ordering Defendants to certify Plaintiffs and class members eligible for Medicaid benefits effective the date shown in Plaintiffs and class members' Medicaid applications;

B. Order State Defendant to pay Plaintiffs and class members' Medicaid benefits effective the date Plaintiff is certified eligible for Medicaid benefits pursuant to 42 U.S.C. § 1396a(a)(34);

C. Order Latrisha Shropshire, David Prescott, and State Defendant to jointly and severally pay all Medicaid benefits due Plaintiff Ruth Dowd.

D. Order Jessica Trobis, Nicole Amor, and State Defendant to jointly and severally pay all Medicaid benefits due Plaintiff Morene Patton.

E. Order Sherrie Sherrick, John Doe 1, and State Defendant to jointly and severally pay all Medicaid benefits due Plaintiff Marvalee Osborn.

F. Order Jayde Wolf, John Doe 2, and State Defendant to jointly and severally pay all Medicaid benefits due Plaintiff Peggy Schroeder.

G. Order Hailee Clark, Natasha Owens, and State Defendant to jointly and severally pay all Medicaid benefits due Plaintiff David Dopps.

H. Enter preliminary and permanent injunctions ordering Defendants to evaluate Medicaid applications within forty-five (45) days after receiving Medicaid applications;

I. Enter preliminary and permanent injunctions ordering Defendants to process Medicaid applications in accordance with federal law;

J. Certify the Class and Subclasses under Fed. R. Civ. P. 23(a) and (b)(2) (and (b)(3) as to the damages claims), and appoint the named Plaintiffs as class representatives and the undersigned as class counsel;

K. Declare that Defendants' failure to render a determination within the time required by 42 C.F.R. §435.912 effects a constructive denial and a deprivation of property without due process of law;

L. Declare that Defendants' denial or reduction of benefits on grounds not permitted by federal law violates the Due Process Clause;

M. Enjoin Defendants from applying internal eligibility criteria more restrictive than federal law, including the improper treatment of Medicaid-qualifying promissory notes and the crediting of income or resources in excess of amounts allowable by law;

N. Order Defendants to re-adjudicate, under correct legal standards, all Subclass 2 determinations, and to issue determinations on all overdue Subclass 1 applications within a time certain;

O. Order independent and neutral review of a representative sample of eligibility determinations to ensure compliance with federal law;

P. Appoint a special master or court monitor under Fed. R. Civ. P. 53 to audit compliance, review determinations, and report periodically to the Court, with Defendants bearing the reasonable costs;

Q. Retain jurisdiction and require periodic compliance reporting (timeliness, approvals and denials, and application-aging data), and, in the event of persistent noncompliance, grant further relief up to and including appointment of a receiver over the eligibility-determination function;

R. Order Defendants to pay, pursuant to 42 U.S.C. §1988, all Plaintiffs' attorneys' fees and costs incurred in this action; and

S. Any and all other relief this Court deems just and equitable.

Respectfully submitted,

/s/ Michael Craig Riffel
Michael Craig Riffel, OBA #16373
Katresa J. Riffel, OBA #14645
Matthew C. Russell, OBA #30239
Riffel, Riffel & Benham, P.L.L.C.
3517 Owen K. Garriott, Suite One
Enid, Oklahoma 73703
Telephone: (580) 234-8447
Facsimile: (580) 234-5547
criffel@westoklaw.com
kriffel@westoklaw.com
mrussell@westoklaw.com
Attorneys for Plaintiff